The defendants, who were the executors and legatees of Micajah (126) Picket, in their answer admitted most of the material facts set forth in the bill. They contended, however, that the decree which the plaintiffs had obtained in South Carolina had been satisfied either from sales made of the testator's property in South Carolina or by advancements made to the children of Kezanah, who were entitled to a part thereof, by the testator, either in his lifetime or by his will; they insisted that the bonds and deeds executed by the testator and the plaintiff *Page 84 
Kezanah, and set forth in the bill, were intended for the adjustment of family disputes, and should be considered as a family settlement. They, therefore, insisted that all advancements made by the testator, either by the will or otherwise, to any of his children by the plaintiff Kezanah, should be considered as a satisfaction pro tanto thereof, and as equivalent for the property settled upon his children by the deed of 12 December, 1800.
The defendant McKinney admitted the conveyance to him, by the testator, of a tract of land in Rutherford County, and certain slaves; he contended that he was a purchaser for value, as in consideration of the conveyance he had agreed to attend to the estate for the term of ten years, working thereon himself, together with the negroes conveyed to him and one of his own, to keep an account of the profits of the plantation, and at the end of the term to convey five-sevenths of the original value, together with an increase and accumulation, to five children of the testator by the defendant Susannah. The other defendants, who were children of Susannah, some of whom were infants, insisted that they were creditors of the value of their labor, and claimed the possession of their legacies until they were severally satisfied of the amount thereof.
The will of Micajah Picket, and a copy of the record of the suit in South Carolina, were filed as exhibits. By the first it appeared that he devised property of different kinds to the plaintiffs, who were his (127) children, and charged his debts upon his lands in the county of Buncombe. The contents of the latter have been anticipated in giving a statement of the bill and answers. It appeared, however, that several of the defendants were infants, and answered by their guardian; but no day was given them upon their full age to show cause against the decree.
The cross-bill prayed a discovery and an account of the advancements made by Micajah Picket to any of his children.
Replications were taken and proofs filed. They principally related to the amount of the advancements, which the defendants insisted should be brought into account.
I am willing to give to this decree all the obligatory force which is attached to it in South Carolina; and there it is binding upon the parties while it remains in force; but it is not unalterable. I suppose it may be reversed there, in whole or in part, by bill of review, either for error in law or for matter of fact, properly brought before the court. *Page 85 
It cannot be more obligatory here than it is there. If it could be reversed there, and the cause of reversal is apparent to this Court, where the execution is prayed for, that cause of reversal may be examined as if it, were reheard upon a bill of review. This Court has no other way of coming at it. However, I give no opinion on this part of the case, because I concur in the principles upon which the decree is based. I think the contract between Micajah Picket and Kezanah his wife, in 1805, was founded on a good and meritorious consideration. That in point of obligation it is more than equal to settlements made after marriage, because in this case a compensation for the injury he had done her, the continuation of which was contemplated for the rest of his life, viz., in withdrawing his protection from her and withholding from her anything like a suitable support, formed a consideration in addition to that upon which such settlements are supported. The settlement upon the children was also founded on a meritorious consideration, and the more to be enhanced, as it announced that a father's care was about to be withdrawn from them, also.
The decree in part has been executed in South Carolina, and it (130) remains to be executed in this State; and the plaintiffs are entitled to a decree for that purpose. But what property shall be liable to that decree is made a question. It is admitted that the Buncombe lands are liable, as well as other property which belonged to the testator undisposed of at his death.
I think it equitable that any donations made by Picket to the plaintiffs after the date of the contract should be brought into the account.
It is contended that the lands in Rutherford are not liable. These lands were conveyed in 1817 to the illegitimate children of Micajah Picket, but not upon a valuable consideration. The conveyance was voluntary, and I am inclined to think they are liable. It is held, in Taylor v. Jones, 2 Atkyns, 600, that a settlement on a wife and children after marriage is a valuable consideration as to the husband, and even against a voluntary conveyance. If a voluntary conveyance is made, and there is a defect in it, so that it cannot operate at law, equity will not decree an execution of it; but if it is intended as a provision for younger children, the rule is different. Allen v. Arme, 1 Vent., 365; Coleman v. Sarel, 1 Ves., Jr., 54;ibid., 3 Bro., 14; Cases in Equity Ab., 24; Bacon's Abr. Agreement B, 2.
From these authorities it would seem that the lands in Rutherford are liable to the complainants' demand. But if the defendants have enhanced their value by labor, that additional value should be brought into the account. On these different points a reference should be made to the master. *Page 86